**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TOHO CO., LTD.,

          Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A TO THE COMPLAINT,

          Defendants.

Civil Action No. 26-cv-1514

## COMPLAINT

Toho Co., Ltd. ("Plaintiff" or "TOHO"), by and through its undersigned counsel, hereby files this Complaint against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A hereto (collectively, "Defendants") and alleges as follows:

**I.**     **Jurisdiction And Venue**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., the Copyright Act, 17 U.S.C. § 101, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a), and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) since each of the Defendants directly targets consumers in the United States, including New York, through at least the fully interactive commercial internet stores

1

operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3)(i) and (ii), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this Judicial District, and derive substantial revenue from business transactions in New York and in this Judicial District or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

4.     In addition, Defendants' illegal counterfeiting and infringement actions caused injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this judicial District.

5.     For example, Defendant Internet Stores accept orders of counterfeit products from and offer to ship to New York addresses located in this Judicial District. Screenshots of the order confirmation from Defendant Internet Stores allowing counterfeit products to be shipped to New York are attached to the Declaration of Jay Harvey Paragoso, filed contemporaneously herewith, as Exhibit 3.

6.     Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York, in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as PayPal and Shop Pay, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of

2

them, through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for counterfeit products, and to place orders for, receive invoices for and purchase counterfeit products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

## II.    **Parties**

7.     Plaintiff Toho Co., Ltd. is a leading Japanese film, theater production and distribution company with a principal place of business at headquartered at 1-2-2 Yurakucho, Chiyoda-ku, Tokyo, Japan 100-8415.

8.     TOHO's most famous creation is Godzilla, a prehistoric reptilian monster awakened and powered by nuclear radiation. Godzilla was introduced by TOHO in 1954 and the Godzilla franchise has been recognized by the Guinness Book of World Records as the longest continuously running movie franchise worldwide. The popularity of the films has led to the franchise expanding to other media, such as television, music, literature and video games. The Godzilla brand has become one of the most recognizable symbols of Japanese pop culture worldwide. TOHO develops, markets, sells and distributes GODZILLA branded products throughout the world including in this Judicial District. TOHO is the official source of authentic GODZILLA products (hereinafter referred to as the "GODZILLA Products"):

3



https://godzilla.com/

9.      This action has been filed to combat online trademark and copyright infringers who trade upon Plaintiff's reputation and goodwill and valuable intellectual property by selling and/or offering for sale unauthorized and infringing versions of the GODZILLA Products in violation of Plaintiff's federally registered trademarks and copyrights.

10.     Plaintiff Toho Co., Ltd. is the current registered owner of U.S. Trademark Registration Nos. 1,161,858; 1,858,403; 2,134,696; 2,211,328; 2,360,489; 4,183,291; 5,093,240; 6,172,295, and 7,245,324 (the "GODZILLA Marks").

11.     The GODZILLA Marks registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the GODZILLA Marks pursuant to 15 U.S.C. § 1057(b).

12.     True and correct copies of the registration certificates for the GODZILLA Marks are attached as Exhibit 1.

4

13. In addition, Toho Co., Ltd. is the current owner of several copyright registrations including, but not limited to, the following Copyright Registration Nos. PA0000785448; PA0000152335; PA0000187943; PA0000157725; PA0000276046; PA0000967584; PA0001036332; PA0001265507; PA0000172648; PA0000152333; PA0000465312; PA0000796965; PA0000382931; PA0000426964; PA0000595595; PA0000796966; PA0000382933; PA0001035743; PA0000382929; PA0000796964; PA0000782264; LP0000029676; PA0001372864; PA0001232751; PA0001195981; PA0001151212; PA0002049886; and PA0000152334 (collectively the "GODZILLA Works").

14. True and correct copies of the registration certificates for the GODZILLA Works are attached as Exhibit 2.

15. The GODZILLA Trademarks and GODZILLA Works have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the GODZILLA Trademarks and GODZILLA Works in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the GODZILLA website and social media sites, and point of sale materials.

16. The GODZILLA Marks and GODZILLA Works have been continuously used and have never been abandoned. The GODZILLA trademark and copyright registrations are valid, subsisting, and in full force and effect. The registrations of the GODZILLA Marks constitute prima facie evidence of their validity pursuant to 15 U.S.C. §1057(b).

17. Plaintiff has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the GODZILLA Marks and GODZILLA Works. As a result, products associated with the GODZILLA Marks and GODZILLA Works are

5

recognized and exclusively associated by consumers and the public as being products sourced from Plaintiff.

18.    Plaintiff has made efforts to protect its interests in and to the GODZILLA Marks and GODZILLA Works. No one other than Plaintiff and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the GODZILLA Marks and/or GODZILLA Works without the express written permission of Plaintiff.

19.    Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of the GODZILLA Products to consumers within the United States, including New York and in this Judicial District.

## III.    Factual Background

20.     Prior to the rise of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for effective enforcement actions to be undertaken since availing itself of takedown procedures to remove infringing GODZILLA Products would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police its rights

against the hundreds of anonymous defendants that are selling illegal counterfeit and infringing products at prices below the cost of an original, authentic GODZILLA Product:

**PLAINTIFF'S OFFICIALLY LICENSED PRODUCT**



https://godzilla.com/collections/figures

**COUNTERFEIT/INFRINGING LISTINGS**







21. The above examples evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized products.

22. In an effort to illegally profit from the creative content of the GODZILLA Marks and/or GODZILLA Works, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authentic GODZILLA Products.

23. Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

24. The systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police and effectively enforce its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

25. To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a recent Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network[1].

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

26.     The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

27.     In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic[2].

28.     Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by

---

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

appearing to sell genuine GODZILLA Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiff's GODZILLA Products that illegally utilize the GODZILLA Marks and GODZILLA Works ("Infringing Products").

29. Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 3.

30. The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

31. The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

32. The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

12

33.     Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Seller Alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

34.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases involving online infringers systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

35.     A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2[3].

36.     Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts,

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiff's legitimate enforcement efforts.

37.    Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

38.    Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately counterfeited Plaintiff's GODZILLA Marks and infringed Plaintiff's GODZILLA Works in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this judicial district of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

### Count I - Trademark Infringement and Counterfeiting
**(15 U.S.C. § 1114)**
**[Against Certain Defendants Designated in Schedule A]**

39.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

40.    This is a trademark infringement action against certain Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered GODZILLA Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The GODZILLA Marks are distinctive. Due to Plaintiff's substantial and continuous investment in quality control, brand management, and product development, consumers have come

14

to expect, rely upon, and associate the highest quality exclusively with Plaintiff and authentic GODZILLA Products offered, sold, or marketed under the GODZILLA Marks.

41.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its GODZILLA Marks and with knowledge that Defendants' Infringing Products bear counterfeit marks, these Defendants intentionally reproduced, copied, and/or colorably imitated the GODZILLA Marks and used spurious designations that are identical with, or substantially indistinguishable from, the GODZILLA Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

42.    These Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiff's exclusive rights in and to the GODZILLA Marks through their systematic and deliberate participation in such unlawful activities.

43.    These Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the GODZILLA Marks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of these Defendants' Infringing Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by these Defendants originate from, are associated with,

or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

44.     These Defendants' unauthorized use of the GODZILLA Marks on or in connection with the Infringing Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and with deliberate intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiff has developed in the GODZILLA Marks through years of quality control and significant investment.

45.     These Defendants' actions constitute willful counterfeiting of the GODZILLA Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), thus entitling Plaintiff to relief pursuant to § 1116(d), and §§ 1117(a)-(c).

46.     These Defendants' continued, knowing, and willful use of the GODZILLA Marks without Plaintiff's consent or authorization constitutes intentional infringement of the GODZILLA Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Plaintiff has no adequate remedy at law, and if these Defendants' actions are not immediately enjoined, Plaintiff will continue to suffer immediate and irreparable harm to its reputation, market position, and the substantial goodwill associated with the GODZILLA Marks, causing damages that are difficult to calculate with precision.

48.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by these Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit GODZILLA Products.

**Count II - False Designation of Origin, Passing Off & Unfair Competition**
**(15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))**
**[Against  Defendants Mentioned in Count I]**

16

49.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50.     Defendants' promotion, marketing, offering for sale, and sale of infringing GODZILLA Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

51.     By using the GODZILLA Marks in connection with the sale of unauthorized Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized Infringing Products.

52.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

53.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its GODZILLA Products, and GODZILLA Marks.

54.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**Count III - Copyright Infringement**
**(17 U.S.C. § 501(a))**
**[Against Certain Defendants Designated in Schedule A]**

55.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.    Plaintiff's copyrighted GODZILLA Works have significant value and have been produced and created at considerable expense.

57.    Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted GODZILLA Works, including derivative works. The GODZILLA Works are the subject of valid copyright registrations. Exhibit 2.

58.    Upon information and belief, Defendants had direct access to and knowledge of the copyrighted GODZILLA Works through their widespread commercial availability in the marketplace, Plaintiff's extensive marketing and promotion, and through Plaintiff's normal business activities. After accessing the GODZILLA Works, Defendants willfully and knowingly created unauthorized copies of the copyrighted works without Plaintiff's consent and engaged in systematic and widespread acts of infringement.

59.    Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrighted GODZILLA Works by making or causing to be made derivative works and by producing and distributing such reproductions without Plaintiff's permission.

60.    Each Defendant, without the permission or consent of the Plaintiff, has and continues to sell online infringing copies and derivative works of the GODZILLA Works. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101 *et seq.*).

61.    Further, as a direct and proximate result of their respective and collective acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted GODZILLA Works. Plaintiff

18

is entitled to full disgorgement of all of Defendants' profits directly and indirectly attributable to their infringement of the GODZILLA Works, including any profits from related merchandise and derivative works, pursuant to 17 U.S.C. § 504(b).

62.     The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

63.     As a result of each Defendant's infringement of Plaintiff's exclusive rights under applicable copyright statute, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

64.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyrights including without limitation the GODZILLA Works, and ordering that each Defendant destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of the copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff pursuant to 17 U.S.C § 503.

## IV.     <u>Prayer For Relief</u>

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using the GODZILLA Marks and GODZILLA Works or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized GODZILLA Product or is not authorized by Plaintiff to be sold in connection with the GODZILLA Marks and/or GODZILLA Works;

b.  passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and not approved by Plaintiff for sale under the GODZILLA Marks and GODZILLA Works;

c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit and Infringing GODZILLA Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing the GODZILLA Marks and GODZILLA Works and damaging Plaintiff's goodwill;

e.  otherwise competing unfairly with Plaintiff in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, Infringing Products or related products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the GODZILLA Marks or which are derived from Plaintiff's GODZILLA Works;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell

20

products or inventory not authorized by Plaintiff which bear the GODZILLA Marks or which are derived from Plaintiff's GODZILLA Works;

2)      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)      Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products or related products not authorized by Plaintiff, which bear the GODZILLA Marks, or which are derived from the GODZILLA Works, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products or related products not authorized by Plaintiff, which bear the GODZILLA Marks, or which are derived from Plaintiff's copyrights in the GODZILLA Works; and

c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4)      That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and Defendants' willful infringement;

5)      In the alternative, that Plaintiff be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6)      For Judgment in favor of Plaintiff against Defendants that they have:

a.  willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. § 501; and

b.  otherwise injured Plaintiff's business reputation and goodwill by Defendants' acts and conduct set forth in this Complaint;

7)      For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be determined at trial;

8)      That Plaintiff be awarded its reasonable attorneys' fees and costs; and

9)      Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.


Dated: February 23, 2026                    Respectfully submitted,

                                            */s/ Shengmao Mu*
                                            Shengmao Mu
                                            NY No. 5707021
                                            **WHITEWOOD LAW PLLC**

22

57 West, 57th Street, 3rd and 4 Floors
New York, NY, 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

Abby Neu, *pro hac vice forthcoming*
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (872) 294-3263
Email: aneu@whitewoodlaw.com

*Counsel for Plaintiff*

23